UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 19-cr-20472 |
| Plaintiff, | Hon. Avern Cohn |
| v. | |
| | Offense(s): |
| D-1 Christian Newby, | 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | 18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft) |
| | 18 U.S.C. § 922(g)(3) – Unlawful User of Controlled Substances in Possession of Firearms and Ammunition |

**Maximum Terms of Imprisonment:**
Count 1: 20 years' imprisonment
Count 2: 2 years' imprisonment mandatory and consecutive to any other sentence
Count 3: 10 years' imprisonment

**Maximum Fines:**
Count 1: $250,000.00
Count 2: $250,000.00
Count 3: $250,000.00

**Supervised Release:**
Count 1: Up to 3 years
Count 2: Up to 1 year
Count 3: Up to 3 years

_____/

## Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Christian Newby and the government agree as follows:

1. **Guilty Plea**

    A. **Count(s) of Conviction**

    Defendant will enter a plea of guilty to Counts One, Two, and Three of the Felony Information, which charge him with wire fraud, aggravated identity theft, and unlawful user of controlled substances in possession of firearms, destructive devices, and ammunition, in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1028A(a)(1), and 18 U.S.C. § 922(g)(3).

    B. **Elements of Offense(s)**

    The elements of Count One (Wire Fraud) are as follows:

    (1) The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

    (2) The defendant acted with the intent to defraud;

    (3) In advancing, furthering, or carrying out the scheme, the defendant caused the transmission of any writing, signal, or sound of some kind by

means of a wire, radio, or television communication in interstate commerce.

The elements of Count Two (Aggravated Identity Theft) are as follows:

(1) The defendant knowingly possessed or used, without lawful authority, the means of identification of another person;

(2) The defendant's possession or use of such means of identification of another person was during and in relation to a felony enumerated in § 1028(A)(c), that felony being wire fraud in violation of 18 U.S.C. § 1343.

The elements of Count Three (unlawful user of controlled substances in possession of firearms, destructive devices, and ammunition) are as follows:

(1) The defendant knowingly possessed firearms, ammunition, and destructive devices;

(2) At the time he possessed the firearms, ammunition, and destructive devices, the defendant was a user of controlled substances as defined in 21 U.S.C. § 802; and

(3) The possession of the firearms, ammunition, and destructive devices affected interstate commerce.

C.  **Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant's guilty plea(s):

Count I:

From on or about March 29, 2018, and continuing until at least January 31, 2019, at Chicago, in the Northern District of Illinois, the Eastern District of Michigan, and elsewhere, the Defendant, CHRISTIAN NEWBY, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from Amtrak, credit card issuing banks, Victim A and others by means of materially false and fraudulent pretenses, representations, and promises.

It was part of the scheme that NEWBY obtained credit card information for more than 1100 credit cards, without the card holders' authorization (the "stolen credit card information"), including the credit card information of Victim A.

It was further part of the scheme that NEWBY used the stolen credit card information without the authorization of the card holders, including Victim A, to purchase Amtrak tickets online using Amtrak.com or the Amtrak Mobile Application. NEWBY used the stolen credit card information without the authorization of the true account holders. In doing so, NEWBY fraudulently misrepresented that he had authority to purchase tickets from Amtrak using the stolen credit card information.

It was further part of the scheme that NEWBY misrepresented and concealed his true identity while using the stolen credit card information to purchase Amtrak tickets. For instance, NEWBY used Company A computer servers to conceal the manner in which he accessed Amtrak.com and the Amtrak Mobile Application.

It was further part of the scheme that after purchasing Amtrak tickets using the stolen credit card information, NEWBY cancelled the Amtrak tickets and received vouchers for the value of those tickets from Amtrak. Because the Amtrak tickets were purchased with stolen credit card information, NEWBY did not personally pay for any of the Amtrak tickets. Instead, the true account holders for the stolen credit card information paid the costs, or, if they contested the charges, the credit card issuing bank or Amtrak incurred the costs of the ticket.

It was further part of the scheme that NEWBY advertised and sold the Amtrak vouchers on Ebay.com at a fraction of their face value. NEWBY used the names of third parties, without their authorization, to create the Ebay accounts he used to sell the Amtrak vouchers. Typically, NEWBY listed vouchers for sale before purchasing Amtrak tickets or obtaining vouchers. After an Ebay customer purchased a voucher, NEWBY would both purchase an Amtrak ticket using the stolen credit card information and create a voucher, or NEWBY would use an existing voucher to fill the customer's order.

It was also part of the scheme that NEWBY received payment for Amtrak

vouchers via PayPal. The PayPal accounts NEWBY used to receive payment for the vouchers were registered under the names of third parties, without their authorization.

It was further part of the scheme that NEWBY concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose and acts done in furtherance of the scheme.

As a result of the scheme NEWBY fraudulently caused Amtrak to issue more than $540,000 in ticket vouchers and caused losses in that same amount to Amtrak, credit card issuing banks and credit card holders. On or about July 31, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, the Eastern District of Michigan and elsewhere, the Defendant, NEWBY, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely a posting on eBay advertising an Amtrak voucher, with an approximate value of $373, in violation of 18 U.S.C. § 1343.

Count II:

On or about August 6, 2018, in the Norther District of Illinois, and the Eastern District of Michigan, NEWBY did transfer, possess, and use, without lawful authority, a means of identification of another person, Victim A's credit card account ending in 6054, during and in relation to a felony, namely a violation of Title18

U.S.C. Section 1343, as alleged in Count One of the Indictment, in violation of Title 18, United States Code, Section 1028A(a)(1).

<u>Count III:</u>

On or about the first day of February, 2019, in the Eastern District of Michigan, NEWBY, then being addicted to methamphetamine, a controlled substance as defined in 21 United States Code Section 802, did knowingly possess the destructive devices, firearms, and ammunition, enumerated in Count Three of the Felony Information. NEWBY admits and acknowledges that the devices, firearms, and ammunition affected interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(3).

2. **Sentencing Guidelines**

    A. **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

    B. **Agreed Guideline Range**

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is **51-63 months' imprisonment + 24 months' imprisonment** (75-87 months), as set forth on the attached worksheets. If the Court finds:

        1. That defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than **51-63 months' imprisonment + 24 months' imprisonment** (75-87 months) the higher guideline range becomes the **agreed range**. However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different from any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

C. **Relevant Conduct**

NEWBY acknowledges that in engaging in the scheme to defraud detailed above, he caused, and intended to cause, a total loss of $550,000.00. Additionally,

NEWBY acknowledges that at least 1100 unauthorized credit card numbers were used in the scheme.

3. **Sentence**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

A. **Imprisonment**

<u>Except as provided in the next sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of imprisonment in this case may not exceed 87 months, the top of the sentencing guideline range as determined by Paragraph 2B.</u>

The Court must impose a two-year sentence of imprisonment on Count 2 (Aggravated Identity Theft) that runs consecutively to any other sentence of imprisonment.

B. **Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

C. **Special Assessment**

Defendant will pay a special assessment of $300.00 at the time of sentencing.

D.  **Fine**

There is no agreement as to fines.

E.  **Restitution**

The Court shall order restitution to every identifiable victim of defendant's offense and all other relevant conduct. There is no agreement on restitution. The Court will determine who the victims are and the amounts of restitution they are owed.

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

Defendant agrees to make a full pre-sentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. Defendant agrees to complete and return the Financial Disclosure Form within three (3) weeks of receiving it from Government counsel. Defendant agrees to participate in a pre-sentencing debtor's examination if requested to do so by Government counsel.

F.  **Forfeiture**

Defendant agrees to forfeit any and all property, real or personal, which constitutes or is derived from proceeds traceable to his violation of Count One of the Information under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). In support of this agreement, defendant acknowledges that he personally obtained or derived, directly or indirectly, at least $550,000.00 in criminal proceeds from the described scheme. Defendant agrees to the entry of a $550,000.00 forfeiture money judgment against him, in favor of the United States (the "Money Judgment").

Defendant further agrees to forfeit any and all right, title, and interest he may possess in the assets listed below, and agrees that these assets are directly traceable to criminal proceeds derived from defendant's commission of the wire fraud scheme charged in Count One:

1. Approximately $208,615.00 currency seized in or about February 2019;

2. Funds seized from bank accounts located at University of Michigan Credit Union Account ($3,590.72), JPMorgan Chase Bank ($5,798.20), and Bank of America ($3,362.03);

3. $1,794.65 seized from PayPal account;

4. Miscellaneous jewelry, including: Gentleman's Stainless Steel Rolex Oyster Perpetual Air-King Wristwatch w/Sapphire Crystal, White

> Sport Dial w/Smooth Hi-Polished Steel Bezel, 34mm case and Gentleman's Stainless Steel Rolex Oyster Perpetual Date Wristwatch on a Steel Oyster Bracelet, 34mm Case Size w/ Hi-Polished Steel Bezel & Black Dial; and
>
> 5. Miscellaneous gold and silver, including two (2) 1985 1oz Gold Maple Coins, one (1) 1986 1oz Gold Maple Coin, one (1) 2014 1oz Gold Krugerrand Coin, one (1) 1976 1oz Gold Krugerrand Coin, and one (1) 38.0 Dwt Silver Ingot.

The United States agrees that any net proceeds derived from forfeiture and sale of the identified property, after resolving any third party claims, shall be credited against the Money Judgment.

Defendant also agrees, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), to the forfeiture of the following firearm and ammunition as property involved in his violation of 18 U.S.C. § 922(g)(3) as alleged in Count Three of the Information:

> 6. One (1) Fabriqu D'Armes, De Guerre De Precision, "Libia", .25 caliber semi-automatic pistol, serial number 15378, including Six (6) round magazine, and Seven (7) .25 caliber rounds of ammunition.

(the property identified above as items 1 through 6., shall collectively be referred to as, the "Subject Property").

Defendant further acknowledges that the United States Secret Service ("Secret Service") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") have initiated administrative forfeiture proceedings against numerous assets, including, but not limited to the assets identified above as 1. through 5. and numerous other firearms, ammunition, and destructive devices seized from 236 E. Lewis Avenue, Milan, Michigan, 8651 Exeter Road, Carleton, Michigan, and 3901 Groveport Road, Unit C202, Obetz, Ohio in or about February 2019. Defendant acknowledges that administrative forfeiture proceedings regarding the assets seized by Secret Service and ATF are nearly complete. Defendant agrees that he will not contest administrative forfeiture, and waives any right he may have to file a claim or petition for remission or mitigation for any of the assets published for administrative forfeiture by Secret Service or ATF, with the following exception: Two 14kt White Gold Rings (2012019013) (the "Rings"). If for any reason any assets seized from Defendant by the Secret Service, ATF, or the Federal Bureau of Investigation, not including the Rings, cannot be administratively forfeited, defendant agrees to consent to administrative and/or judicial forfeiture of these assets.

In addition, Defendant acknowledges that as a result of his conviction in this case, he will be a felon not entitled to possess firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1). Defendant's agreement to forfeiture includes an agreement to waive any rights he may possess in any firearms and ammunition seized from him in

connection with this action. Defendant further agrees to waive any rights he may have in these firearms/ammunition under *Henderson v. United States*, 135 S.Ct. 1780 (2015).

Defendant agrees to the entry of one or more orders of forfeiture in this action. Defendant agrees to sign a Stipulated Preliminary Order of Forfeiture and/or consent to the entry of a Preliminary Order of Forfeiture containing the above referenced Money Judgment and forfeiture of the Subject Property, at his Rule 11 plea hearing, or within two weeks of that hearing. Defendant agrees that the forfeiture order shall be final and effective as to his interests upon entry.

Defendant agrees that the Money Judgment may be satisfied, to whatever extent possible, from any property owned by defendant or under his control. Defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant will cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement. Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States under this agreement and will execute any legal

documents that may be required to transfer title to the United States. Defendant will also take whatever steps are necessary to ensure that any forfeitable assets are not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant acknowledges his understanding that forfeiture is part of the sentence that may be imposed on him in this case and waives his right to challenge any failure by the court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right he may have under Rule 32.2 of the Federal Rules of Criminal Procedure for a further determination regarding forfeitability.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges to the described forfeiture (including direct appeal, habeas corpus, or any other means), on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.

4. **Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made

under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

5. **Other Charges**

If the Court accepts this agreement, the government will dismiss all remaining charges in this case, including the Criminal Complaint currently pending against the defendant in the Northern District of Illinois. The government also agrees not bring additional charges relating to any other acts of credit card fraud or identity theft of which the government is aware as of June 26, 2019.

6. **Each Party's Right to Withdraw from This Agreement**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Paragraph 3. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Paragraph 3.

7. **Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed **87 months'**

imprisonment, the defendant also waives any right he may have to appeal his sentence on any grounds. If the defendant's sentence of imprisonment is at least **75 months'** imprisonment, the government waives any right it may have to appeal the defendant's sentence.

This waiver does not bar filing a claim of ineffective assistance of counsel in court.

8. **Consequences of Withdrawal of Guilty Plea(s) or Vacation of Conviction(s)**

If defendant is allowed to withdraw his guilty plea(s) or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea(s) becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea(s) or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

9. **Collateral Consequences of Conviction**

Defendant understands that his conviction(s) here may carry additional consequences under federal and state law, including the potential loss of the right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. Defendant further understands that, if he is not a native-born citizen of the United States, there may be adverse immigration consequences resulting from conviction. These include possible removal from the United States, denial of citizenship, denaturalization, denied admission to the United States in the future and other possible consequences. Defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of defendant's conviction on any of these matters. Defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration consequences or other collateral consequences of his conviction.

10. **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

11. **Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by

the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

12. **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on 7/19/2019. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

MATTHEW SCHNEIDER
United States Attorney

Julie A. Beck
Assistant United States Attorney
Chief, Drug Task Force

Robert Jerome White
Assistant United States Attorney

Date: 7/10/2019

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____  
Penny Beardslee  
Attorney for Defendant  

7/18/19  
Date

_____  
Christian Newby  
Defendant  

7/18/19  
Date